1
2
3
4
5
6
7

# UNITED STATES DISTRICT COURT

8

## EASTERN DISTRICT OF CALIFORNIA

9

| | | |
|---|---|---|
| 10 | GREGORY A. JONES,         ) | 1:08-cv-01464-AWI-JMD-HC |
| 11 |      Petitioner,    ) | FINDINGS AND RECOMMENDATION REGARDING PETITION FOR WRIT OF |
| 12 | v.           ) | HABEAS CORPUS |
| 13 | B. CURRY,         ) | |
| 14 |      Respondent.   ) | OBJECTIONS DUE WITHIN THIRTY DAYS |
| 15 | | |

16      Petitioner Gregory A. Jones ("Petitioner") is a state prisoner proceeding with a petition for

17  writ of habeas corpus pursuant to 28 U.S.C. § 2254.

18                                **Procedural History**

19      In 1992, a jury convicted Petitioner of one count of second degree murder and three counts of

20  assault with a firearm.  (Answer, Ex. A).  The sentencing court imposed a sentence of eighteen years

21  to life.  (Id.).

22      On September 11, 2006, Petitioner appeared before California's Board of Parole Hearings

23  (BPH).  The BPH denied Petitioner parole. (Doc. 28, Attachment 1).

24      Petitioner filed a petition for writ of habeas corpus in the Los Angeles County Superior Court

25  challenging the BPH's denial of parole.  The Superior Court issued a reasoned decision denying

26  Petitioner relief on October 5, 2007.  (Pet. at 69).

27  ///

28  ///

1     Petitioner filed a petition for writ of habeas corpus in the California Court of Appeal on

2  October 25, 2007; the Court of Appeal summarily denied the petition on November 10, 2007.  (Pet.

3  at 70).

4     On November 30, 2007, Petitioner filed a petition for writ of habeas corpus with the

5  California Supreme Court.  The California Supreme Court summarily denied the petition on June 11,

6  2008. (Pet. at 72).

7     Petitioner filed the instant federal petition for writ of habeas corpus on August 21, 2008.

8  (Doc. 3).  Respondent filed an answer to the petition on January 1, 2009.  (Doc. 20).  Petitioner filed

9  and a traverse on February 3, 2009.  (Doc. 24).

10                                    **Factual Background**

11     Petitioner does not challenge his underlying conviction or sentence in this action.  Rather,

12  Petitioner contends that the BPH's denial of parole to him at his 2006 hearing was not based on

13  sufficient evidence of his current dangerousness and therefore violated his right to due process of the

14  law.[1]  Accordingly, the factual background relevant to resolution of Petitioner's claim concerns the

15  process he was afforded at his parole hearing and the evidence relied upon by the BPH in denying

16  Petitioner parole.

17     Petitioner appeared before the BPH on September 11, 2006 and was represented by counsel.

18  The BPH received evidence proffered by Petitioner and afforded Petitioner an opportunity to be

19  heard.  (*See* Doc. 28, Attachment1).  In assessing Petitioner's suitability for parole, the BPH relied

20  on the description of Petitioner's commitment offense contained in the California Court of Appeal's

21  opinion affirming Petitioner's conviction.  (Id. at 7-10).  As stated in the Court of Appeal's opinion,

22  Petitioner was involved in an altercation with several individuals outside a McDonald's restaurant,

23  pulled out a semiautomatic weapon, and open fired on the individuals as they attempted to flee the

24  scene.  (Id. at 9).

25  ///

26

27  [1] Petitioner purports to advance ten claims for relief.  In fact, Petitioner's ten contentions are not distinct claims for relief but

28  rather are ten reasons Petitioner feels the BPH's decision is not supported by some evidence.  The Court need not reach each of Petitioner's contentions individually, as the relevant inquiry is whether "is *any* evidence in the record that could support the conclusion reached" by the parole board.  *See Superintendent v. Hill*, 472 U.S. 445, 455-46 (1985)(emphasis added).

1   In addition to assessing the nature of Petitioner's commitment offense, the BPH evaluated

2   Petitioner's central file, the most recent Life Prisoner Evaluation Report prepared for Petitioner, and

3   a psychological report prepared in 2002.  (Id. at 25).  The BPH  discussed Petitioner's participation

4   in self-help and vocational training programs as well as his parole plans.  (Id. at 34-37; 39-41).

5   Finally, the BPH discussed Petitioner's history of disciplinary infractions while incarcerated.  (Id. at

6   37-38).

7                                              **Discussion**

8   **I.      Jurisdiction and Venue**

9         A person in custody pursuant to the judgment of a state court may file a petition for a writ of

10  habeas corpus in the United States district courts if the custody is in violation of the Constitution or

11  laws or treaties of the United States.  28 U.S.C. § 2254(a)[2]; 28 U.S.C. § 2241(c)(3); *Williams v.*

12  *Taylor*, 529 U.S. 362, 375, n.7 (2000).  Venue for a habeas corpus petition is proper in the judicial

13  district where the prisoner is held in custody.  *See* 28 U.S.C. § 2241(d).

14        Petitioner asserts that he is currently incarcerated at Corcoran State Prison in Kings County,

15  California, in violation of his right to due process under the United States Constitution.  As Kings

16  County is within the Eastern District of California, the Court has jurisdiction to entertain the petition

17  and venue is proper in the Eastern District.  28 U.S.C. § 84; 28 U.S.C. § 2241(c)(3).

18  **II.     Standard of Review**

19        Section 2254 "is the exclusive vehicle for a habeas petition by a state prisoner in custody

20  pursuant to a state court judgment, even when the petitioner is not challenging his underlying state

21  court conviction."  *Sass v. California Board of Prison Terms*, 461 F.3d 1123, 1126 (9th Cir. 2006)

22  (quoting *White  v. Lambert*, 370 F.3d 1002, 1009-10 (9th Cir. 2004)).  Under section 2254, a petition

23  for habeas corpus may not be granted unless the state court decision denying Petitioner's state habeas

24

25  [2] The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) applies to all petitions for writ of habeas corpus filed
    after its enactment.  *Lindh v. Murphy*, 521 U.S. 320, (1997); *Jeffries v. Wood*, 114 F.3d 1484, 1499 (9th Cir. 1997), *cert.*

26  *denied*, 522 U.S. 1008, 118 S.Ct. 586 (1997) (quoting *Drinkard v. Johnson*, 97 F.3d 751, 769 (5th Cir.1996), *cert. denied,*
    520 U.S. 1107, 117 S.Ct. 1114 (1997), *overruled on other grounds by Lindh v. Murphy*, 521 U.S. 320, 117 S.Ct. 2059 (1997)

27  (holding AEDPA only applicable to cases filed after statute's enactment).  The instant petition was filed after the enactment
    of the AEDPA and is therefore governed by its provisions.

28

1   petition "was contrary to, or involved an unreasonable application of, clearly established Federal law,

2   as determined by the Supreme Court of the United States," or  "was based on an unreasonable

3   determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C.

4   § 2254(d).  "A federal habeas court may not issue the writ simply because that court concludes in its

5   independent judgment that the relevant state-court decision applied clearly established federal law

6   erroneously or incorrectly...rather, that application must be objectively unreasonable."  *Lockyer v.*

7   *Andrade*, 538 U.S. 63, 75 (2003) (citations omitted).

8   **IV.    Petitioner's Due Process Claim**

9              **A. The Due Process Framework**

10             The Due Process Clause of the Fourteenth Amendment of the United States Constitution

11  prohibits states from depriving persons of protected liberty interests without due process of law.  *See,*

12  *e.g., Sass*, 461 F.3d at 1127.  The Court must "analyze Petitioner's due process claim in two steps:

13  'the first asks whether there exists a liberty or property interest which has been interfered with by the

14  State; the second examines whether the procedures attendant upon that deprivation were

15  constitutionally sufficient.'"  *Id.* (quoting *Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454,

16  460 (1989) *partially overruled on other grounds by Sandin v. Conner*, 515 U.S. 472 (1995)).

17             California law vests prisoners whose sentences provide for the possibility of parole with a

18  constitutionally protected liberty interest in the receipt of a parole release date.  *Irons v. Carey*, 505

19  F.3d 846, 850-51 (9th Cir. 2007); *Sass*, 461 F.3d at 1128; *McQuillion v. Duncan*, 306 F.3d 895, 903

20  (9th Cir. 2002) (citing *Greenholtz v. Inmates of Neb. Penal and Corr. Complex*, 442 U.S. 1, 12

21  (1979)); *Biggs v. Terhune*, 334 F.3d 910, 915 (2003).  Although California's parole statute creates a

22  liberty interest protected by the Due Process Clause, *Irons*, 306 F.3d at 903, "since the setting of a

23  minimum term is not part of a criminal prosecution, the full panoply of rights due a defendant in [a

24  criminal prosecution proceeding] is not constitutionally mandated" in the parole context, *Pedro v.*

25  *Oregon Parole Bd.*, 825 F.3d 1396, 1399 (9th Cir. 1987).  Due process requires that a parole board's

26  denial of parole to a prisoner be supported by "some evidence."[3]  *Irons*, 505 F.3d at 851 (citing *Sass*,

27

28  [3] The Ninth Circuit is currently considering the "some evidence" standard en banc. *Hayward v. Marshall*, 512 F.3d 536 (9th Cir. 2008) *reh'g en banc granted*, 527 F.3d 797 (2008).

461 F.3d at 1128-29 (quoting *Superintendent v. Hill*, 472 U.S. 445, 457(1985)); *see also Biggs*, 334 F.3d at 915; *McQuillion*, 306 F.3d at 904.  The requirement that the parole board's denial of parole to Petitioner be supported by some evidence is clearly established federal law.[4]  *See Irons*, 505 F.3d at 851 (citing *Sass*, 461 F.3d at 1128-29 (quoting *Hill*, 472 U.S. at 457); *see also Biggs*, 334 F.3d at 915; *McQuillion*, 306 F.3d at 904.[5]

The "some evidence" standard is minimal, and is meant only to "[assure] that 'the record is not so devoid of evidence that the findings of...[the] board were without support or otherwise arbitrary.'" *Sass*, 461 F.3d at 1129 (quoting *Hill*, 472 U.S. at 457).  "Ascertaining whether [the some evidence] standard is satisfied does not require...weighing of the evidence. ..the relevant question is whether there is any evidence in the record that could support  the conclusion reached." *Hill*, 472 U.S. at 455-456.   Want of due process is not established by showing merely that incompetent evidence was received and considered.  *United States ex rel. Vajtauer v. Commissioner of Immigration*, 273 U.S. 103, 106 (1927).[6]  "Upon a collateral review in habeas corpus proceedings, it is sufficient that there was some evidence from which the conclusion of the administrative tribunal could be deduced." *Id.*  "The fundamental fairness guaranteed by the Due Process Clause does not require courts to set aside decisions of prison administrators that have some basis in fact." *Hill*, 472 U.S. at 456 (citations omitted).

///

[4] Respondent contends that no clearly established federal law requires that California parole decisions be supported by "some evidence." "The Supreme Court need not have addressed the identical factual circumstances at issue in a case in order for it to have created 'clearly established' law governing that case....rather, it is enough that the Supreme Court has prescribed a rule that plainly governs the petitioner's claim." *McQuillion*, 306 F.3d at 901 (citations omitted).  Further, this Court is not authorized to disregard the settled law of the Ninth Circuit, which holds that the "some evidence" requirement is clearly established federal law in the parole context.  *See id.*

[5] The Attorney General's reliance on *Biggs*, *Irons*, and *Sass* as authority for Respondent's contention that "the Ninth Circuit's use of the some-evidence [sic] standard is not clearly established federal law and is not binding on this court," is a flagrant miscitation. (Answer at 6).  In each of these cases, the Ninth Circuit concluded that the some evidence standard is clearly established federal law in the parole context and applied the standard to petitions under AEDPA.  *See Irons*, 505 F.3d at 851; *Sass*, 461 F.3d at 1128-29; *Biggs*, 334 F.3d at 915.  The Court reminds counsel that by presenting to the Court a pleading, an attorney certifies that to the best of the person's knowledge, information, and belief the legal contentions are warranted by a nonfrivolous argument. Fed. R. Civ. P. 11(b)(3).

[6] *Vajtauer* concerned a collateral challenge to an immigration decision.  The Supreme Court cited *Vajtauer* in support of its formulation of the some evidence standard set forth in *Hill*. 472 U.S. at 455.

1    In assessing whether the parole board's denial of parole to Petitioner is supported by "some

2    evidence," the Court's analysis "is framed by the statutes and regulations governing parole suitability

3    determinations in [California]." *Irons*, 505 F.3d at 851.  Accordingly, the Court must look to

4    California law "to determine the findings that are necessary to deem a prisoner unsuitable for parole,

5    and then must review the record in order to determine whether the state court decision holding that

6    these findings were supported by 'some evidence' in Petitioner's case constituted an unreasonable

7    application of the 'some evidence' principle articulated in *Hill*."  *Id.*

8    Under California law, the paramount inquiry in determining whether to grant a prisoner

9    parole is whether the prisoner "will pose an unreasonable risk of danger to society if released from

10   prison." CAL. CODE. REGS. TIT 15, § 2402(a) (2008); *In Re Lawrence*, 44 Cal. 4th 1181, 1202 (Cal.

11   2008).  Title 15, section 2402 of the California Code of Regulations sets forth the factors to be

12   considered by the BPH in applying California's parole statute to Petitioner.  Section 2402 provides in

13   part:

> All relevant, reliable information available to the panel shall be considered in
> determining suitability for parole. Such information shall include the circumstances of
> the prisoner's social history; past and present mental state; past criminal history,
> including involvement in other criminal misconduct which is reliably documented;
> the base and other commitment offenses, including behavior before, during and after
> the crime; past and present attitude toward the crime; any conditions of treatment or
> control, including the use of special conditions under which the prisoner may safely
> be released to the community; and any other information which bears on the prisoner's
> suitability for release. Circumstances which taken alone may not firmly establish
> unsuitability for parole may contribute to a pattern which results in a finding of
> unsuitability.

CAL. CODE. REGS., tit. 15, § 2402(b) (2008).  Factors supporting a finding of unsuitability for parole

include an especially heinous commitment offense, serious misconduct while incarcerated, and

psychological risk factors.  CAL. CODE REGS., tit. 15, § 2402(c).

The factors listed in section 2402(c) "establish unsuitability [for parole] if, and only if, those

circumstances are probative to the determination that a prisoner remains a danger to the public."

*Lawrence*, 44 Cal.4th at 1212.   "When a court reviews a decision of the Board or the Governor, the

relevant inquiry is whether some evidence supports the decision ...that the inmate constitutes a

current threat to public safety...not merely whether some evidence confirms the existence of certain

1  factual findings." *Id.*  A rational nexus between the unsuitability factors applicable to the prisoner

2  and the ultimate determination of dangerousness must exist.  *See id.* at 1227.

3          **B. Review of Petitioner's State Habeas Proceeding**

4          The Los Angeles County Superior Court issued the last reasoned decision denying Petitioner

5  habeas relief.  As the California Court of Appeal and the California Supreme Court both denied

6  Petitioner's state habeas petitions without analysis, the Court must "look through" the summary

7  dispositions to the last reasoned decision issued by the State.  *Ylst v. Nunnemaker*, 501 U.S. 797, 806

8  (1991).  Accordingly, the Court reviews the reasoned decision of the Los Angeles Superior Court

9  denying Petitioner relief.

10          The Superior Court held that the BPH's denial of parole to Petitioner is supported by some

11  evidence of Petitioner's current dangerousness.  (Pet. at 69).  Specifically, the Superior Court noted

12  the BPH's permissible reliance on the nature of Petitioner's commitment offense, Petitioner's serious

13  disciplinary infraction while incarcerated, Petitioner's failure to upgrade vocationally, and the district

14  attorney's opposition to Petitioner's parole.  (Id.).  After careful review of the record, the Court

15  cannot say that the Superior Court's determination was objectively unreasonable, as the Court finds

16  that each of the factors relied upon by the BPH to deny Petitioner parole bares a rational nexus to the

17  BPH's finding of dangerousness and is supported by evidence in the record.

18          The record demonstrates that in 2001, only five years prior to the parole denial at issue in this

19  action, Petitioner was found guilty of possession of escape paraphernalia, a serious disciplinary

20  infraction. (Pet. at 225).  The California legislature has determined that serious misconduct while

21  incarcerated tends to demonstrate unsuitability for parole.  *See* CAL. CODE REGS., tit. 15, §

22  2402(c)(6).  The record also supports the BPH's determination that Petitioner failed to upgrade

23  vocationally.  According to Petitioner, the reason he has not completed vocational training is that a

24  foot injury precludes him from wearing the boots necessary to do so.  (Doc. 28, Attachment 1 at 51).

25  The BPH noted that, given Petitioner's health and vocational training, Petitioner's parole plans were

26  "unrealistic in that the employment plans are not work duties that Mr. Jones is physically capable of

27  doing at this time." (Id. at 73).

28  ///

1   The California legislature has determined that whether or not a prisoner has developed marketable

2   skills and has realistic plans for release is relevant in determining parole suitability.  *See* CAL. CODE

3   REGS., tit. 15, § 2402(d)(8).

4          As noted by the Superior Court, the BPH also considered the argument advanced by the

5   district attorney in denying Petitioner parole.  (Pet. at 69).  The district attorney's opposition was

6   based on the fact that Petitioner has given various inconsistent accounts of his crime at his parole

7   hearings.  (Doc. 28, Attachment 1 at 53-55).  The BPH was troubled by Petitioner's inconsistent

8   versions of the crime.  The BPH stated:

9          Mr. Jones, we reviewed the transcript from your last hearing and we were concerned
           because in the transcript it indicates that you told the Panel that you were shooting
10         while you were on the ground.  And we didn't get that from you today...It's as though
           there are so many different versions of what happened that you haven't become
11         comfortable with what actually did happen....The Panel is troubled by there being so
           many versions.
12

13   (Id. at 74).  California Code of Regulations title 15 section 2402(b) provides that the parole board

14   *shall* consider the prisoner's "past and present attitude toward the crime."  Section 2402(d)(3) also

15   expressly directs the parole board to consider whether a prisoner "understands the nature and

16   magnitude of the offense."  A prisoner's lack of insight into the crime or attempt to minimize the

17   crime may constitute some evidence of current dangerousness.  *See In re Shaputis*, 44 Cal.4th 1241,

18   1257 n. 14 (Cal. 2008) (attempts to minimize crime may support finding of unsuitability).  Here, the

19   BPH's concern that Petitioner had not really come to grips with the crime is supported by

20   Petitioner's inconsistent and possibly dishonest statements to the BPH at his various parole hearings.

21          The Superior Court also concluded, reasonably, that the BPH's assessment of the nature of

22   Petitioner's commitment offense is supported by the record.  Whether the commitment offense was

23   carried out in "an especially heinous, atrocious, or cruel manner" is a factor which tends to

24   demonstrate unsuitability for parole.  CAL. CODE REGS., tit. 15, § 2402(c)(1).  The fact that multiple

25   victims were attacked, injured, or killed during the commission of a crime may render the

26   commission of the crime especially heinous, atrocious, or cruel.  CAL. CODE REGS., tit. 15, §

27   2402(c)(1)(A).  It is undisputed that Petitioner shot at multiple victims as they attempted to flee from

28   Petitioner. (Doc. 28, Attachment 1 at 9-10).  Accordingly, the BPH's conclusion that the nature of

1   the commitment offense tended to demonstrate Petitioner's unsuitability for parole is supported by

2   the record.  Although reliance solely on a prisoner's commitment offense to deny parole may, in

3   some instances, violate the prisoner's due process rights, in the instant case, the commitment offense

4   was one of several factors relied upon by the BPH to deny Petitioner parole.  Under California law,

5   factors "which taken alone may not firmly establish unsuitability for parole may contribute to a

6   pattern which results in a finding of unsuitability." CAL. CODE. REG. tit 15 § 2402(b).

7          As discussed above, each of the factors relied upon by the BPH to deny Petitioner parole is

8   supported by evidence in the record.  However, the mere existence of some evidence of particular

9   unsuitability factors is insufficient to deny a Petitioner parole under California law, as a rational

10  nexus between the unsuitability factors applicable to the prisoner and the ultimate determination of

11  dangerousness must exist.  *See Lawrence*, 44 Cal.4th at at 1227.  Given the relatively short period of

12  time between Petitioner's serious disciplinary infraction and the parole denial at issue here, the Court

13  finds there was a rational nexus between Petitioner's possession of escape paraphernalia in prison

14  and his dangerousness at the time of his 2006 parole denial.  Additionally, the Court finds that the

15  commitment offense also had a sufficient nexus with Petitioner's dangerousness at the time of his

16  2006 parole hearing.   This is especially so given Petitioner's attitude towards his crime as evinced

17  by his inconsistent accounts to the BPH, *see Shaputis*, 44 Cal.4th at 1257 n. 14.  The nexus between

18  Petitioner's commitment offense and his dangerousness at the time of his 2006 parole hearing is

19  bolstered further by the fact that Petitioner had not yet served the minimum sentence imposed by the

20  sentencing court at the time the BPH denied him parole in 2006.  The Court notes that the Ninth

21  Circuit has never held that a parole denial based solely on the commitment offense violates a

22  prisoner's due process rights before the expiration of the prisoner's minimum term.  *Irons*, 505 F.3d

23  at 853-54.  Finally, Petitioner's lack of realistic parole plans serves to increase his risk of

24  dangerousness.  *See In re Andrade*, 141 Cal. App. 4th 807, 817-819 (Cal. Ct. App. 2006) (discussing

25  importance of realistic parole plans in parole considerations).[7]

26  _____

27  [7] *Andrade* predates the California Supreme Court's decision in *Lawrence* and thus did not expressly discuss the nexus
    between realistic parole plans and dangerousness.  It is axiomatic, however, that a prisoner released back into society without
28  a realistic means of providing for himself poses a higher risk of relapsing into criminal activity than a prisoner who has
    arranged for employment and housing before release.  Petitioner's inability to conform to prison rules combined with his lack

1   In light of the BPH's assessment of the nature of Petitioner's commitment offense,

2   Petitioner's inconsistent and potentially dishonest accounts of his crime to the BPH, Petitioner's lack

3   of realistic parole plans, and Petitioner's serious disciplinary infraction only five years prior to the

4   denial at issue in this case, the Court cannot say that the Superior Court's finding that the some

5   evidence standard was satisfied was objectively unreasonable.  The precise manner in which the

6   specified factors relevant to parole suitability are considered and balanced lies within the discretion

7   of the parole board, *see, e.g., Shaputis*, 44 Cal. 4th at 1260, and this Court is precluded from re-

8   weighing the evidence,  *Hill*, 472 U.S. at 456.  Accordingly, Petitioner is not entitled to relief under

9   section 2254. *E.g, Lockyer*, 538 U.S. at 75 (no relief under section 2254 unless state court

10  adjudication was objectively unreasonable).

11  **RECOMMENDATION**

12  Based on the reasons stated above, the Court RECOMMENDS that the petition for writ of

13  habeas corpus be DENIED WITH PREJUDICE and the Clerk of Court be DIRECTED to enter

14  judgment for Respondent.

15  This Findings and Recommendation is submitted to the Honorable Anthony W. Ishii, United

16  States District Court Judge, pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Rule 72-304

17  of the Local Rules of Practice for the United States District Court, Eastern District of California.

18  Within thirty (30) days after being served with a copy, any party may file written objections with the

19  court and serve a copy on all parties.  Such a document should be captioned "Objections to

20  Magistrate Judge's Findings and Recommendation."  Replies to the objections shall be served and

21  filed within ten (10) court days (plus three days if served by mail) after service of the objections.

22  The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636(b)(1)(c).  The

23  parties are advised that failure to file objections within the specified time may waive the right to

24  appeal the District Court's order.  *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

25  ///

26  ///

27

28  of realistic parole plans suggests that Petitioner could easily lapse into criminal conduct and is therefore sufficient to establish a rational nexus between Petitioner's unsuitability factors and dangerousness.

1    IT IS SO ORDERED.

2    **Dated:   October 26, 2009**          /s/ John M. Dixon
                                    UNITED STATES MAGISTRATE JUDGE